WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Progressive Services Incorporated, | No. CV-21-00199-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Christopher Sonnenberg, *et al.*, | |
| Defendants. | |

At issue is Defendants' Christopher Sonnenberg and Martin Alexander's Motion to Dismiss or, in the Alternative, to Change Venue (Doc. 13, Mot.) to which Plaintiff Progressive Services, Inc. filed a Response (Doc. 16, Resp.) and Defendants filed a Reply (Doc. 17, Reply). The Court finds this matter suitable for resolution without oral argument. LRCiv 7.2(f).

**I.   BACKGROUND**

Plaintiff is a roofing business headquartered in Phoenix, Arizona, with offices throughout the United States, including branches in Oregon and Washington. (Compl. ¶¶ 14-15, 158.) Defendant Christopher Sonnenberg ("Mr. Sonnenberg") first joined Plaintiff's business as a Senior Project Manager at the Portland, Oregon location, and later stepped into the role of Branch Manager at the Portland location. (Compl. ¶ 16.) Mr. Sonnenberg served as Branch Manager from 2014 until his resignation in October 2020. (Compl. ¶ 81.) Defendant Martin Alexander ("Mr. Alexander") was employed as a Service Manager at

Plaintiff's Portland location from 2016 until he resigned in June 2020. (Compl. ¶ 17, 80.) Pursuant to their employment, both Mr. Sonnenberg and Mr. Alexander signed agreements requiring that any litigation arising out of the agreements be filed in Maricopa County, Arizona. (Compl ¶ 8.) In signing the agreements, Defendants consented to jurisdiction and venue in Maricopa County. (Compl ¶ 8.) Additionally, the agreements contain confidentiality and non-solicitation provisions. (Compl. ¶¶ 24-47, 48-53, Exs. 1-4.)

In 2018, Defendants formed Flatline Roofing, LLC ("Flatline"), which Plaintiff alleges is its "direct competitor" in the Portland metropolitan area. (Compl. ¶¶ 18, 22.) Plaintiff claims that Defendants grew Flatline by soliciting business from Plaintiff's customer list, soliciting Plaintiff's employees to join Flatline, bidding against Plaintiff in roofing repair jobs, charging Flatline's labor and material costs to Plaintiff, and disclosing Plaintiff's proprietary information. (Compl. ¶¶ 54-120, 150, 153, 170, 176.) Plaintiff also alleges that Corin Pike ("Ms. Pike"), another of Plaintiff's employees, assisted Defendants in taking Plaintiff's information to benefit Flatline. Plaintiff asserts that Defendants' acts violate their Employment Agreements. (Compl. ¶¶ 125-26.)

On February 5, 2021, Plaintiff filed the Complaint before this Court alleging Defendants' breach of contract, and seeking relief under contract theories, the Arizona Uniform Trade Secrets Act (A.R.S. § 44-401 *et seq.*) and the Federal Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*). (*See generally* Compl.)

On February 11, Plaintiff commenced action against Flatline and Ms. Pike in Oregon state court. (Resp. at 6.) The action was removed to federal court in the District of Oregon on April 1, 2021. *See Progressive Services, Inc. v. Flatline Roofing, LLC et al.*, 3:21-cv-00494 (D. Or.), Doc. 1.

On April 7, 2021, Defendants brought a Motion to Dismiss in this case arguing that (1) the Court should dismiss the action because "a parallel action is pending in another federal court," (2) the Court should dismiss the action because Flatline and Ms. Pike are required parties, or (3) the Court should transfer this case to the District of Oregon. The Court now resolves each aspect of that Motion.

## II. LEGAL STANDARDS

### A. First-to-File Rule

The "first-to-file" rule allows a district court to dismiss or stay proceedings when a substantially similar case was previously filed in another district court.[1] *Pacestetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates for sound judicial administration." *Id.* To determine whether to stay or dismiss a federal action pursuant to the first-to-file rule, courts in the Ninth Circuit consider: (1) the chronology of the lawsuits, (2) the similarity of the parties, and (3) the similarity of the issues. *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

### B. Failure to Join Necessary Parties

Under Rule 12(b)(7), a party may move to dismiss an action for failure to join a necessary and indispensable party under Rule 19. Courts apply a three-step process when evaluating a Rule 12(b)(7) Motion. *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). First, the court identifies whether a nonparty is required to join. A nonparty is necessary if (A) the court cannot accord complete relief in the nonparty's absence, or (B) the nonparty claims an interest in the action such that its absence may (i) impair or impede its ability to protect that interest or (ii) expose an existing party to the risk of incurring multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1). This analysis heavily depends on the facts and circumstances of the case. *Peabody W. Coal Co.*, 610 F.3d at 1081. If the court concludes a party is necessary under Rule 19(a), it must then determine whether joinder is feasible. *Id.* at 1078. Finally, if the absent party cannot be

---

[1] Although both parties discussed the *Colorado River* doctrine in their briefing the Court does not analyze that doctrine here. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The *Colorado River* doctrine allows a federal court with subject matter jurisdiction to dismiss or stay a federal action in deference to parallel state court proceedings. *Id.* at 817. As the first-to-file rule applies here, application of the *Colorado River* doctrine is not relevant.

joined, the court must determine whether, "in equity and good conscience," the action may proceed in its absence or should be dismissed. *Id.*; *see* Fed. R. Civ. P. 19(b)

### C. Venue Transfer

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The presence of a valid forum selection clause changes the Court's calculus for transferring venue. *Atl. Marine Const. Co. Inc. v. U.S. Dist. Ct. for W. D. Tex.*, 571 U.S. 49, 63 (2013). Forum selection clauses are presumptively valid and enforceable unless (1) "enforcement would be unreasonable and unjust;" (2) the clause is "invalid for such reasons as fraud or overreaching;" or (3) enforcement would contravene a "strong public policy of the forum in which suit is brought." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–15 (1972). When a forum selection clause is so inconvenient as to deprive a party of its day in court, it is invalid. *Id.* at 18. The party challenging the forum selection clause bears the "'heavy burden' of establishing the existence of . . . grounds for rejecting enforcement." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000). In Arizona, forum selection clauses are enforced unless the party claiming unfairness or oppression meets the applicable burden of proof, and "[m]ere physical inconvenience and increased costs are not enough to defeat a forum selection clause." *Benson v. Casa De Capri Enters. LLC*, No. CV-18-00006-PHX-DWL, 2019 WL 3430159, at *8–9 (D. Ariz. July 30, 2019) (quoting *Bennett v. Appaloosa Horse Club*, 35 P.3d 426, 431 (Ariz. Ct. App. 2001)). Where there is a valid forum selection clause, the Court may consider only public interest factors and should not consider arguments about parties' private interests. *Atl. Marine*, 571 U.S. at 64.

### III. ANALYSIS

#### A. First-to-File Rule

In the Motion to Dismiss, Defendants first argue that the Court should dismiss this action because of the pending action in the District of Oregon. (Mot. at 5-8.) To determine whether to stay or dismiss a duplicative action, courts in the Ninth Circuit rely on the three-part test set out in *Kohn.* 787 F.3d at 1240.

First, the Court considers the chronology of the filings. *Id.* ("Ordinarily, we start by analyzing which lawsuit was filed first."). The lawsuit in this Court was filed on February 5, 2021, and the action in Oregon state court was filed on February 11, 2021.

Defendants, without mentioning that the rule they cite is, in fact, referred to as the "first-to-file" rule, asks for a reading of law where the Court "looks not to the precise date of the filing but to whether one court had proceeded to a later stage in litigation than the other." (Mot. at 6.)[2] Defendants rely on *Pacestetter* in making this argument, noting the value of dismissal in serving the "goal of judicial efficiency." *Pacestetter Sys. Inc.*, 678 F.2d at 96. However, Defendants do not cite to a single instance where a court that was asked to stay or dismiss an action found the first-to-file rule applicable when that court was the first-to-file forum.

Plaintiff, on the other hand, takes a more literal reading of the precedent and contends that this Court is the "first-to-file" forum, and therefore the first-to-file rule cannot apply. (Resp. at 6.) The Court agrees. "[W]hen a complaint involving the same parties and issues has *already* been filed in another district," the first-to-file rule may apply. *Id.* at 95 (emphasis added). Finding that the present action was filed first, the first-to-file rule is inapplicable, and the Court does not consider the remaining factors.

---

[2] The Court takes judicial notice of the District of Oregon docket, and notes that the Oregon action has been set for trial in October 2022 and is significantly further along than the action before this Court. *See Progressive Services, Inc. v. Flatline Roofing, LLC et al.*, 3:21-cv-00494 (D. Or.).

**B.     Failure to Join Necessary Parties**

Second, Defendants contend that dismissal is proper under Rule 12(b)(7) and Rule 19 because Flatline and Ms. Pike are required parties. (Mot. at 8-14.) A party is necessary if, among other reasons, complete relief cannot be accorded to the existing parties in the nonparty's absence. *See* Fed. R. Civ. P. 19(a)(1)(A)(i).

Defendants, citing only *Peabody*, argue that Flatline and Ms. Pike are required parties because Plaintiff intends to "seek relief from Flatline and Pike arising out of the same allegations as in this case," and insinuate that by filing suit in Oregon, Plaintiff has a demonstrated interest in alleging claims for damages against Flatline and Ms. Pike in the present case. (Mot. at 10.) Thus, Defendants contend that the Court cannot provide complete relief to Plaintiff without joining Flatline and Ms. Pike. (Mot. at 10.) Plaintiff disagrees, asserting that it seeks relief only for the damages Defendants caused, and "neither Ms. Pike nor Flatline are assessed those damages." (Resp. at 8-9.)

As a preliminary point, Defendants do not cite to a single case where a pending lawsuit in another district served as the basis for deeming a party "required" under Rule 19(a)(1)(A). Where courts have found that complete relief cannot be accorded among the parties already in the action, it is generally on the grounds that judgment against a named party in the action would not be binding on an unnamed party, undermining the ability of the court to grant relief. *See, e.g.*, *Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) (finding that judgment against named federal officials would not be binding on the Quinault Nation, where the plaintiffs sought to enjoin federal officials from "dealing with the Quinault Indian Nation"); *Peabody W. Coal Co.*, 610 F.3d at 1081 (finding that if the plaintiff prevailed in obtaining an injunction ordering the defendant to disregard an employment preference provision and the Secretary of the Interior were not joined, the Secretary would remain free to insist the defendant honor the provision).

Here, if the Court were to grant Plaintiff the relief it requests, Defendants would be ordered to pay Plaintiff money damages and cease any conduct in violation of their

contractual obligations and the Arizona Trade Secrets Act, A.R.S. § 44-401 *et seq.* Although Ms. Pike and Flatline may have caused Plaintiff additional damage, their contributions are not relevant here. Plaintiff also seeks to enjoin Defendants from using their confidential information, and requests that Defendants return said information. Defendants argue that in order to be complete, the injunctive relief Plaintiff requests, in particular, requires the joinder of Ms. Pike and Flatline. (Reply at 6.) The Court disagrees. First, Plaintiff's claims here stem from Mr. Sonnenberg and Mr. Alexander's alleged breaches of their contractual obligations to Plaintiff as individuals. The injunctive relief Plaintiff seeks is against Mr. Sonnenberg and Mr. Alexander in their individual capacities. Thus, if Plaintiff establishes that it is entitled to relief, that relief will be complete.

Under Rule 19(a)(1)(B), if a nonparty claims an interest in the action such that its absence may (i) impair or impede its ability to protect that interest or (ii) expose an existing party to the risk of incurring multiple or inconsistent obligations, it is a necessary party. Defendants, again citing only *Peabody*, argue that Flatline and Ms. Pike have legally protectable interests at stake in this litigation that they may not properly protect if not joined. Defendants observe that "Plaintiff claims that by simply operating Flatline's business in Portland, Defendants violate their employment agreements." (Mot. at 10-11.)

With regard to Ms. Pike, Defendants' arguments clearly fail. Plaintiff's claims against Ms. Pike arise from her own employment agreement with Plaintiff, and any judgment against Defendants in the present case is not relevant to her. As Defendants' arguments pertain to Flatline, however, they are stronger. Mr. Sonnenberg and Mr. Alexander are the sole members of Flatline, giving it an interest in the present matter. When such an interest exists—something, the Court notes, it had to research and determine on its own in the absence of any briefing by the parties—courts in the Ninth Circuit must "determine whether that interest will be impaired or impeded by the suit." *Salt River Project Agr. Imp. and Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)). "Impairment may be minimized if the absent party is adequately represented in the suit." *Id.* The Court considers

three factors in determining whether an absent party's interests are adequately represented by an existing party: (1) whether the interests of a present party are such that it will make all of the absent party's arguments; (2) whether the present party is capable of and willing to make the absent party's arguments; and (3) whether the absent party would offer any necessary element to the proceedings that would be neglected by the present parties. *Id.*

Here, Defendants can be expected to adequately represent Flatline's interests. First, Defendants are Flatline's sole members, so Flatline's interests and Defendants' interests are clearly aligned. Second, there is no reason to believe that Defendants will not make any reasonable argument Flatline would make if it were a party. Third, Defendants do not provide any indication that Flatline would offer any necessary element to the present action that Defendants will neglect.

Thus, because Mr. Sonnenberg and Mr. Alexander adequately represent Flatline's interests, Flatline is not a necessary party under Rule 19(a)(1)(B)(i).

**C.     Venue Transfer**

As an alternative to dismissal, Defendants ask the Court to transfer the present action to the District of Oregon, where Plaintiff has brought suit against Flatline and Ms. Pike. The presence of a valid forum selection clause changes the Court's calculus for transferring venue pursuant to 28 U.S.C. § 1404(a). *Atl. Marine*, 571 U.S. at 63. While a traditional § 1404(a) analysis directs courts to assess both private interest and public interest factors,[3] the presence of a valid forum selection clause requires District Courts to consider only the public interest factors; the Court must deem the private interest factors "to weigh entirely in favor of the pre-selected forum." *Id.* at 64. However, "public interest factors will rarely defeat a transfer motion," and "forum-selection clauses should control except in unusual cases." *Id.*

---

[3] Private interest factors include: the relative ease of access to sources of proof, the availability of process to secure witnesses, the cost of attendance for willing witnesses, and other practical issues. *Piper Aircraft v. Reyno*, 454 U.S. 235, 241, n. 6 (1981). Public interest factors include: court congestion, local interest in the resolution of a particular dispute, the familiarity of the forum with the law that governs the case, and the avoidance of unnecessary problems of conflict of laws. *Id.*

Defendants do not challenge the validity of the forum selection clause in each of their employment agreements, and the Court notes that Arizona courts have held that forum selection clauses are presumptively valid. *See Brittain v. Twitter Inc.*, CV 18-01714-PHX-DGC, 2019 WL 110967 at *3 (Jan. 4, 2019) (citing *M/S Bremen*, 407 U.S. at 17).

Finding no issues with the validity of the present forum selection clause, the Court turns directly to Defendants' arguments for transfer based on the public interest factors. In their Motion, Defendants cite three separate out-of-district cases, all of which consider both private interest and public interest factors, and none of which involve a valid forum selection clause. (Mot. at 15-16.) In fact, in *Ventress*, to which Defendants devote nearly an entire page, the Court's decision to transfer venue was largely based on the locations of the parties, witnesses, and evidence. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118-19 (9th Cir. 2007). The crux of Defendants' argument is that when a plaintiff chooses to initiate litigation in multiple venues involving the same factual dispute, courts have a public interest in avoiding duplicative proceedings and should transfer venue. (Mot. at 16; Reply at 8-9.) Defendants reiterate this point in their Reply, citing *Reffin* for the proposition that a "paramount consideration is the 'compelling public interest in avoiding duplicative proceedings . . . and potentially inconsistent judgments.'" (Reply at 9, citing *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 58 (D.D.C. 2000) (internal citations omitted).) Like the other precedent Defendant cites, *Reffin* did not involve a forum selection clause.

While it may be true that duplicative proceedings are not in the public interest, Defendants fail to persuade the Court that the action in the District of Oregon is duplicative to begin with. The Court has examined the complaint in that action, and although many of the same facts are alleged, the grounds for liability differ, as do the causes of action. (Doc. 15, Ex. A.) Further, given the lack of precedent cited, Defendants do not persuade the Court that the potential for a duplicative proceeding is sufficient grounds for transfer in light of a valid forum selection clause.

Plaintiff, on the other hand, addresses each of the public interest factors in turn. (Resp. at 13-14.) The public interest factors that District Courts consider in determining

whether transfer is merited include: (1) the relative degrees of court congestion; (2) the court's relative familiarity with the governing law; and (3) the local interest in deciding localized controversies. *Atl. Marine*, 571 U.S. at 63-64. First, Plaintiff notes that courts in the District of Oregon and District of Arizona are both congested. While at the time of Plaintiff's Response this factor may have been neutral, the District of Arizona has become significantly more congested, so this factor weighs slightly in favor of transfer. [4] Second, Plaintiff is correct in its observation that because District Courts in Arizona interact with Arizona law more frequently, this factor weighs against transfer. (Resp. at 13.) Finally, the Court agrees with Plaintiff's assertion that Arizona has an interest in ensuring that contracts governed under its laws are enforced under its laws, so the third factor weighs against transfer. (Resp. at 14.)

In sum, the public interest factors weigh against transfer. Defendants have not persuaded the Court that the forum selection clause should not control. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) ("A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable.") (quoting *M/S Bremen*, 407 U.S. at 17)). The Court will deny Defendants' Motion.

## IV.  CONCLUSION

The Court finds that dismissal pursuant to either the first-to-file rule or Rule 12(b)(7) and Rule 19 is not warranted. The Court must give due weight to the forum-selection clauses found in both Defendants' employment agreements, and therefore will not transfer the present action to the District of Oregon. Nonetheless, the Court recognizes the pending litigation in the District of Oregon poses the risk of inconsistent results. Having decided as much, the Court will now require additional briefing from each party on the propriety of staying the present matter through the conclusion of the Oregon action. *See Landis v. N.*

---

[4] The median time from filing to disposition of a civil case is 20.7 months in the District of Arizona, but only 11.4 months in the District of Oregon. *See* UNITED STATES COURTS, *Caseload Statistics & Data Tables*, uscourts.gov, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last accessed Nov. 4, 2021).

*Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.").

**IT IS THEREFORE ORDERED** denying Defendant's Motion to Dismiss or, in the Alternative, to Change Venue (Doc. 13).

**IT IS FURTHER ORDERED** that, by **December 6, 2021**, the parties shall each file simultaneous briefing on the issues presented above regarding the propriety of staying this matter through the conclusion of the litigation in the District of Oregon. Briefs shall not exceed five pages, and no responses are permitted.

Dated this 8th day of November, 2021.

Honorable John J. Tuchi
United States District Judge